Filed 10/19/21  P. v. Hoffman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C088654 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F0006128) |
| v. | |
| JOSHUA HOFFMAN, | |
| Defendant and Appellant. | |

A jury found defendant Joshua Hoffman met the criteria as a sexually violent predator (SVP) under the Sexually Violent Predators Act[1] (Act).  The trial court then committed defendant to the Department of State Hospitals for an indeterminate term.  Defendant appeals the judgment, asserting insufficient evidence supports the SVP determination.  We find no merit in his contention and affirm.

---

[1]  Welfare and Institutions Code section 6600 et. seq  Undesignated statutory references are to the Welfare and Institutions Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2008, defendant pled guilty to three counts of lewd and lascivious acts on three minors, T. J., M. N., and W. B., each of whom was under the age of 14 years. In 2015, the district attorney filed a petition seeking defendant's civil commitment under the Act. The court held a jury trial on the petition. The evidence at trial consisted of testimony from four victims, two of whom included the victims in the originally charged counts, the then-deputy district attorney who had prosecuted defendant's original case, one prosecution expert, and two defense experts.

I

*Prosecution Evidence*

During the majority of the charged crimes, defendant was a teacher at an elementary school and was approximately 25 or 26 years old. M. N., T. J., and M. W. all testified they were in defendant's class. They all testified to similar incidents in which defendant would touch students "in a caressing way, definitely close to areas that shouldn't even come close to a teacher coming near." On more than one occasion, defendant would invite a student to sit on his lap and would then rub the area around her inner thigh with his hand. In other instances, defendant would place his arm around a student's shoulder and then rub his hand around the student's collar bone and chest underneath the shirt.

The prosecution also called K. H., who encountered defendant in 2006, when he was her youth pastor. She recounted an incident in which she was at defendant's apartment for Bible study and he touched her breasts and vagina. K. H. reported the incident and gave a statement to the police shortly thereafter.

Dr. Gangaw Zaw, a consulting psychologist for the Department of State Hospitals, testified for the prosecution. Dr. Zaw first evaluated defendant in prison in 2015 for about one hour. She met with him again to update the evaluation in 2016 for about two hours. She also attempted to meet with him in 2017, but defendant declined the

interview. To prepare for the interviews, Dr. Zaw reviewed defendant's conviction records, including his record of arrest and prosecution sheet, probation report, abstract of judgment, SVP screening report, and his prison records.

During one of his interviews with Dr. Zaw, defendant discussed an incident that occurred with the third victim for the charged counts, W. B., when defendant was 19 years old. Defendant explained he was renting a room in a house while attending college. W. B., who was 11 years old, was related to his landlord, and visited the house. In one incident, defendant recalled rubbing W. B.'s shoulders and touching her "upper chest region." In another, defendant gave W. B. a piggyback ride and said he "wanted to push the limit," so he rubbed her legs up to her thighs. Finally, in a third incident, he put his arm around W. B., moved his hand "above her chest," and "felt excitement that his hand was close to her chest." W. B. reported the incidents to her father, who confronted defendant and called the police. Defendant was arrested, although he was never convicted as a result of the incidents.

Defendant admitted his actions toward T. J., M. N., and W. B., and told Dr. Zaw "[h]e felt touching the children w[as] arousing to him . . . [and] because he was not actually touching their genitalia or penetrating them, that he thought it was okay." He explained his encounter with W. B. did not give him any concerns about pursuing a career in teaching because, among other things, he would set constraints on himself, like not being alone with children and not allowing them to sit on his lap. Defendant stated he had viewed child pornography involving a four-year-old child, but that he had only viewed it "accidentally."

Dr. Zaw diagnosed defendant with pedophilic disorder. Defendant initially told Dr. Zaw he did not think he needed any sex offender treatment, but in his second interview he said he "wanted to understand where his arousal for children stemmed from." Dr. Zaw noted defendant had not pursued an available opportunity to receive sex offender treatment while awaiting trial.

3

Dr. Zaw testified defendant was "likely to engage in sexually violent predatory criminal behavior as a result of his . . . diagnosed mental disorder without appropriate treatment in custody." In particular, Dr. Zaw cited the fact that, despite his encounter with the police for his actions with W. B., defendant did not seek treatment and instead went on to become an elementary school teacher and reoffend.

Dr. Zaw used the Static-99R, a 10-item risk assessment tool, to assess defendant's risk of reoffending. Defendant scored a two on the test, placing him at "average risk" of reoffending. In statistical terms, an offender receiving a score of two had a recidivism estimate of 5.6 percent within five years. Dr. Zaw explained the test was a "moderate predictor" of recidivism, but that it was limited because it would only be scored based on "detected offenses" and did not include any "undetected offenses." The test also only considered "static factors," which are "historical factors that can't change," and did not include "factors about the individual that can change over time," called "dynamic risk factors." Thus, while the test was a "useful tool," it would not provide "the whole picture."

Dr. Zaw concluded parole constraints would be inadequate to ensure the safety of the public if defendant were released.

II

*Defense Evidence*

Defendant retained Dr. Rachyll Dempsey, a forensic psychologist, to testify on his behalf. Dr. Dempsey met with defendant for about five hours, during which she conducted an interview and administered several tests on defendant. She reviewed defendant's arrest records, as well as the other expert reports that had been written in the case.

Dr. Dempsey agreed with Dr. Zaw's scoring of defendant's Static-99R and her diagnosis of defendant. Dr. Dempsey also agreed that the Static-99R by itself was not representative of defendant's risk of reoffending "because research shows that basing

4

someone's entire life on a static score that's never going to change is not actually [a] good representation of their risk." Thus, she also administered other "dynamic risk tools," including the "Stable" and "LS/CMI." Both tests showed defendant to be at a "low to moderate risk" of reoffending at "around 6 percent." Dr. Dempsey suggested any treatment defendant would receive after release could reduce the risk.

Dr. Dempsey testified defendant would be "amenable to sex offender treatment" and that any such treatment would likely be successful. She concluded it was "highly unlikely" defendant would reoffend if he were released.

Dr. Caprice Haverty, a psychologist retained by defendant, worked with Dr. Alex Schmidt, a colleague, to assess defendant. Dr. Haverty reviewed police reports for defendant's case and the other expert reports in the case. Dr. Haverty and Dr. Schmidt also scored defendant on the Static-99R; they scored defendant as a three, but Dr. Haverty observed his score would have gone down to a two since then, given his age, placing him in the "low end of moderate" risk category. Dr. Haverty and Dr. Schmidt also used the "Acute" test, the "Stable-2007," and the "LS/CMI" to assess defendant's dynamic risk factors. Defendant scored in the "low range" on the "Acute" test and the "LS/CMI," and in the moderate range on the "Stable-2007" test.

Dr. Haverty agreed with Dr. Zaw and Dr. Dempsey that defendant had pedophilia as a diagnosable mental disorder. She asserted, however, that SVP's typically would also have some other clinical syndrome, such as bipolar disorder or psychopathy. She stated defendant was not at substantial risk to reoffend and had only a 6 percent chance of reoffending. In particular, she said defendant did not have antisocial personality disorder, sociopathy, a history of drug or alcohol abuse, or a history of "being unable to be responsible for himself, educate himself, work consistently at a job," all which suggested he would not qualify as an SVP.

Dr. Haverty testified defendant would be amenable to sex offender treatment and would benefit from such treatment. She also opined that it was not necessary to keep

5

defendant in custody to protect the community because he would be closely monitored on parole.

The jury ultimately found true the allegation that defendant is an SVP and the trial court committed defendant to the custody of the Department of State Hospitals for an indeterminate term.

DISCUSSION

Defendant contends there is insufficient evidence he is likely to engage in sexually violent criminal behavior if released with supervision and treatment.  In particular, defendant argues, all of the experts at trial testified his "static risk assessment placed him in the moderate risk category," which "equated with about a 5.6 percent [chance] of reoffending if released without supervision and sex offender treatment."  Because 5.6 percent is such a low statistical probability, "[n]o reasonable juror, fairly assessing the evidence, could have rationally concluded beyond a reasonable doubt that there was a substantial danger . . . [defendant] would reoffend if released."  We disagree.

To establish a defendant is an SVP, the prosecution must prove beyond a reasonable doubt that the defendant has been convicted of at least two separate sexually violent offenses, has a diagnosable mental disorder that made him a danger to the health or safety of others, and the disorder makes it likely he will engage in sexually violent predatory conduct if released without treatment.  (§§ 6600, subds. (a), (e), 6604; *People v. Roberge* (2003) 29 Cal.4th 979, 985.)  In *Roberge*, our Supreme Court concluded the requirement that the convicted sex offender is likely to engage in sexually violent predatory conduct if released "is met when 'the person presents a *substantial danger*, that is, a *serious and well-founded risk*, that he or she will commit such crimes if free in the community.' "  (*Roberge*, at p. 982, quoting from *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 922.)  This does not require a finding that it is more likely than not the person will reoffend.  (*Ghilotti*, at p. 916.)  Whether a person poses a "danger to the health and safety of others" (§ 6600, subd. (a)) "does not, by common

6

understanding, evaporate with an expert's prediction that the sufferer's risk of reoffense is *no greater than 50 percent*" (*Ghilotti*, at p. 920). However, a finding of such danger requires "much more than the mere *possibility* that the person will reoffend." (*Id.* at p. 922.)

Under the SVPA, we review challenges to the sufficiency of the evidence using the substantial evidence standard that applies in criminal cases. (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466.) " 'In reviewing the evidence sufficient to support a commitment under [the SVPA], "courts apply the same test as for reviewing the sufficiency of the evidence to support a criminal conviction." ' [Citation.] 'Thus, this court must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. [Citation.] To be substantial, the evidence must be " 'of ponderable legal significance . . . reasonable in nature, credible and of solid value.' " ' " (*People v. McCloud* (2013) 213 Cal.App.4th 1076, 1088.) " 'In reviewing the record to determine the sufficiency of the evidence this court may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment.' " (*People v. Sumahit* (2005) 128 Cal.App.4th 347, 352.)

Here, all three experts used the Static-99R test as a starting point for their evaluations and agreed defendant should receive a score of two. However, they then proceeded to consider other factors, beyond those captured in the test, to evaluate defendant. Dr. Zaw testified the test alone was only a "moderate predictor" of recidivism, and that it would not capture "factors about the individual that can change over time." Thus, she also considered whether defendant had taken steps to participate in sex offender treatment and the interaction between his career aspirations and pedophilia to determine whether he had a risk of reoffending. Both Dr. Dempsey and Dr. Haverty agreed the static score was not dispositive and should be considered in conjunction with dynamic variables: Dr. Dempsey described such "dynamic factors" as "[i]ncredibly

important" and Dr. Haverty similarly explained, "depending where the dynamic variables are, that's going to impact your read of the static variables." Defendant's assertion that he had only a moderate risk of reoffending, based on his static risk assessment, is therefore incorrect because the testimony at trial established the static assessment was only the beginning of the analysis, rather than its conclusion.

Moreover, Dr. Zaw's analysis of defendant's dynamic risk factors supported the conclusion defendant presented a substantial danger of reoffending. Among other things, Dr. Zaw considered it significant that, despite defendant's early encounter with law enforcement as a result of his actions toward W. B., defendant continued to pursue a career as an elementary school teacher. As she explained, "[w]hen someone has been questioned for their sexual behavior by the police, that should tell the person . . . . he either needs help or there's something that can get him into trouble." Despite the incident with W. B., however, defendant "went on to become a teacher instead of getting help." And, he ended up teaching students who were the same age as W. B. Dr. Zaw also explained that defendant's apparent hypersexuality required more, rather than fewer, restraints to ensure the safety of the public, and the restraints placed on defendant out of custody would be inadequate. Defendant had told Dr. Zaw he previously imposed self-restraints on himself to teach in elementary school, including not being alone with children and not allowing children to sit on his lap. Based on the victim testimony, however, defendant had disregarded those restraints. Finally, Dr. Zaw was concerned defendant had not sought out sex offender treatment, despite his professed interest in such treatment. Dr. Zaw thus concluded defendant was "likely to re-offend in a sexually predatory manner."

To the extent Dr. Dempsey and Dr. Haverty testified defendant was not likely to reoffend, even considering his dynamic risk factors, the jury was free to weigh the conflicting expert testimony and decide whose testimony to credit. (*People v. Poe* (1999) 74 Cal.App.4th 826, 831 ["It is not the role of this court to redetermine the credibility of

8

experts or to reweigh the relative strength of their conclusions"]; *People v. Kerley* (2018) 23 Cal.App.5th 513, 530 ["The testimony of a single witness, if believed by the fact finder, is sufficient to prove any fact"].)  The jury's finding indicates it accepted Dr. Zaw's testimony, and her testimony provided a reasonable and supported factual basis justifying her ultimate conclusions.  As such, the evidence was sufficient to support the jury's finding.

### DISPOSITION

The judgment is affirmed.


/s/ _____
Robie, J.


We concur:


/s/ _____
Blease, Acting P. J.


/s/ _____
Duarte, J.