[No. A083416. First Dist., Div. One. July 30, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
IRAN ROGER POE, Defendant and Appellant.

**COUNSEL**

Matthew H. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Gregg E. Zywicke, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEIN, Acting P. J.**—The court declared Iran Roger Poe a sexually violent predator (SVP) within the meaning of Welfare and Institutions Code section 6600, after a court trial, and committed appellant to the Department of Mental Health for two years.

His primary contention on appeal is that there was insufficient evidence to support the court's finding that it was "likely" he would engage in sexually violent criminal conduct if released. (Welf. & Inst. Code, § 6600.) Appellant also raises a series of constitutional challenges to the Sexually Violent Predators Act (SVP Act) that have since been resolved against him, in *Hubbart* v. *Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584]. Finally, he contends that he is entitled to precommitment custody credits for the time in custody after his expected release date from prison, until the date upon which he was committed as a SVP.

We shall conclude that appellant's contentions are without merit, and affirm the court's order.

ANALYSIS

## I.

*Sufficiency of the Evidence*

■ At trial the People bore the burden of proving beyond a reasonable doubt that: (1) appellant had been convicted of at least two separate sexually violent offenses; (2) that he has a "diagnosed mental disorder"; and (3) that his mental disorder made it likely that he will engage in sexually violent behavior if released. (Welf. & Inst. Code, § 6600; *Hubbart* v. *Superior Court*, *supra*, 19 Cal.4th 1138.)

■ Appellant does not challenge the sufficiency of the evidence that he had at least two convictions for qualifying sexual offenses. Nor does he challenge the sufficiency of the evidence that he had a diagnosed mental disorder.[1] Instead, he contends that the finding that he is "likely to engage in sexually violent behavior" is not supported by substantial evidence. ■ In reviewing the record to determine the sufficiency of the evidence this court may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment. (*People* v. *Mercer* (1999) 70 Cal.App.4th 463, 466 [82 Cal.Rptr.2d 723].)

■ At trial two experts, Dr. Malinek and Dr. Franks, explained in detail the bases of their separate opinions, following a clinical evaluation of appellant, and a review of his criminal record and mental health history, and a review of actuarial data, that he was likely to reoffend. They also used a recently developed scale to assess the risk of sexual recidivism. The scale is called Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR). Dr. Malinek and Dr. Franks calculated a score of 4 on the RRASOR scale applied to appellant, which, prior to adjustment for other clinical factors, meant that the risk that he would engage in sexually violent behavior over the next 10 years was 48.6 percent.

Appellant's own expert, Dr. Podboy, did not conduct a clinical evaluation of appellant. In his opinion appellant should have received a score of 3

---

[1] Dr. Malinek testified that appellant met the diagnostic criteria for two mental disorders: polysubstance dependence and antisocial personality disorder. He also thought it possible that appellant could be diagnosed with paraphilia, an abnormal sexual attraction to nonconsenting victims, but concluded he did not have sufficient information to make that diagnosis. Dr. Franks agreed that appellant could be diagnosed with antisocial personality disorder and polysubstance dependence. He further concluded that appellant suffered from paraphilia based upon three incidents of sexually violent behavior with nonconsenting victims, combined with other incidents of aggressive behavior toward women, including female prison staff, and his brother's girlfriend.

on the RRASOR scale, indicating a 24.8 percent chance of recidivism within five years, and a 36.9 percent chance within ten years. He also criticized some of the categorizations underlying the RRASOR scale. Dr. Podboy testified that appellant was less likely to reoffend because he was now in his 40's, and more likely to slow down and be less angry.

The trial court resolved the conflict by crediting the testimony of Drs. Malinek and Franks. Their testimony is substantial evidence supporting the conclusion that appellant was likely to engage in sexually violent behavior. It is not the role of this court to redetermine the credibility of experts or to reweigh the relative strength of their conclusions. (*People* v. *Mercer, supra,* 70 Cal.App.4th at pp. 466-467.)

Appellant nevertheless argues that the court's finding that he was likely to reoffend is not supported by the opinions of Drs. Malinek and Franks, because both experts reported that, using the RRASOR scale, the risk that he would engage in such behavior over the next 10 years was 48.6 percent. Appellant argues that, as a matter of law, any percentage under 50 percent is not "likely." It is unnecessary to engage in a debate about what minimum percent risk using this scale would support the conclusion that it is likely that person will reoffend, because *all* the experts who testified, including Dr. Podboy, agreed that the numerical results of this scale should not be used in isolation when assessing the likelihood of reoffending. Dr. Franks explained that the RRASOR evaluation "doesn't consider a wealth of other information which has been shown to correlate with reoffense." For example, it does not consider whether the offender has any insight into his past behavior, or whether he had any empathy for his victims, his coping mechanisms, his work skills, or his drug addiction. The experts agreed that the proper application of the RRASOR was an "adjusted actuarial approach;" in which the RRASOR actuarial data, is used as a base, that is adjusted by assessing and weighing appropriate clinical factors. Using this approach, both Dr. Malinek and Dr. Franks concluded that the risk of appellant reoffending was *higher than 50 percent.*

Appellant also argues that Dr. Malinek and Dr. Franks based their opinion that he was likely to engage in sexually violent behavior primarily upon his prior qualifying sex offenses, and argues that the opinion must be based upon more than evidence of his prior qualifying convictions, otherwise the finding that he is likely to reoffend is a foregone conclusion. The record establishes that the experts did not rely solely, or even primarily, upon the fact that appellant had two convictions for qualifying sexual offenses in reaching their conclusion that he was likely to engage in sexually violent behavior. Both experts testified that the best predictor of future behavior was

the length of the history of sexual offenses and the number of sexual offenses. They also identified a multitude of other factors and applied them to their evaluation of appellant. For example, the longer the period over which sexual offenses are committed, and the younger the offender at the onset of this behavior, the more likely it is that the person will reoffend. Other factors increasing the likelihood of reoffending include lack of cooperation with supervision or parole, choosing strangers, as opposed to family members, as victims, and the absence of marital ties. Applying these factors to their clinical evaluation of appellant, both experts noted that appellant was very young, only 15, when he committed his first sexual offense, and his pattern of aggressive conduct continued over many years,[2] including engaging in threatening conduct towards female prison staff. They also observed that he did not adjust well, even to the structured environment of prison, where he had spent approximately 18 of the last 22 years, that he continued to engage in substance abuse in prison,[3] and received several disciplinary write-ups. His performance on parole, was poor, and several of his parole violations were alcohol related. Appellant's victims were all strangers to him, and appellant continued to express a great deal of anger. Appellant also was not married. All of these foregoing factors were strong indicators that appellant was likely to reoffend.

## II.

### Constitutional Challenge to SVP Act

Appellant next raises a series of challenges to the SVP Act. Specifically, he contends that the SVP Act violates state and federal due process rights by (1) authorizing involuntary commitments for inmates who are not mentally ill; (2) allowing for commitment without any proof of present dangerousness, and based only upon a preponderance of the evidence. He also contends that the SVP Act violates constitutional protection against ex post facto laws.

Each of these arguments was considered, and rejected, by our Supreme Court in *Hubbart* v. *Superior Court, supra,* 19 Cal.4th 1138, which was filed after appellant filed his opening brief. The court, in *Hubbart,* also rejected appellant's related equal protection argument that the SVP Act imposes disparate treatment when compared to persons involuntarily committed as a mentally disordered offender (MDO) (Pen. Code, § 2960 et seq.) by requiring a finding that the person " 'is likely' " to commit violent sex crimes,

---

[2]Appellant was 38 years old at the time his was evaluated by the experts.

[3]Dr. Malinek explained that the continuing substance abuse increased the risk of reoffending, because it facilitated the commission of sexual offenses by lowering his inhibitions. Most of appellant's sexual offenses had occurred when he was under the influence of alcohol or other drugs.

whereas the MDO commitment requires a present threat of harm. (19 Cal.4th at pp. 1168-1170.)[4] ■ No purpose would be served by reiterating or reconsidering the court's reasoning here, because we are bound to follow our Supreme Court's precedent. (*Auto Equity Sales, Inc.* v. *Superior court* (1962) 57 Cal.2d 450, 454 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ Appellant also contends that the SVP Act violates state and federal equal protection clauses, by imposing disparate treatment when compared to an MDO commitment by (1) not excluding personality and adjustment orders; (2) not requiring a recent objective basis for finding the person is likely to reoffend; and (3) not offering treatment during the inmate's prison term. The Supreme Court did not decide these equal protection arguments in *Hubbart*, because they were not timely raised. (*Hubbart* v. *Superior Court*, *supra*, 19 Cal.4th 1138, 1170, fn. 31.) However, the identical arguments were recently considered and rejected in *People* v. *Torres* (1999) 71 Cal.App.4th 704, 726-728 [84 Cal.Rptr.2d 96] (petition for review filed on June 4, 1999).* We agree with the analysis in *Torres*, that, assuming arguendo MDO's and SVP's are similarly situated, there is no disparate treatment because: (1) The SVP Act does not permit persons to be committed without evidence of a diagnosed mental disorder; (2) the SVP Act does require a "recent objective basis" for commitment in the form of the determination of two experts, credited by the trier of fact, that "a subject presently suffers from a mental disorder which predisposes him to commit further sexually violent predatory crimes"; and (3) no significant difference exists regarding treatment provisions once a person is found to be a MDO or an SVP.

### III.

### *Custody Credits*

■ Finally, appellant contends that he should receive credits against the two-year term of commitment for the time in custody after his expected release date from prison (January 5, 1998), until the date upon which he was committed as a sexually violent predator (July 2, 1998).

On April 14, 1998, after appellant's expected release date, but before the SVP trial commenced, Welfare and Institutions Code section 6604.1 became effective. (Stats. 1998, ch. 19, §§ 5, 10.) Section 6604.1, subdivision (a)

---

[4]The *Hubbart* court assumed arguendo that persons committed as an MDO is similarly situated to a SVP, but found no disparate treatment. (*Hubbart* v. *Superior Court, supra*, 19 Cal.4th 1138, 1170.)

*Reporter's Note: Review granted August 11, 1999 (S079575).

provides: "The two-year term of commitment provided for in section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. The two-year time shall not be reduced by any time spent in a secure facility prior to the order of commitment." The Legislature also found that section 6604.1, was merely declaratory of existing law, and that subdivision (a) clarified that "consistent with a civil mental health commitment, credits that may reduce a term of imprisonment are not applicable." (Stats. 1998, ch. 19, § 10.)[5]

Appellant asserts that Welfare and Institutions Code section 6604.1 does not apply to him because it became effective while he was in custody after his expected release date from prison, but before his trial, and suggests that we should construe the version in effect prior to the addition of section 6604.1 as authorizing precommitment credits. It is unnecessary to decide whether section 6604.1 applies to appellant's commitment, because we hold that appellant was not entitled to credits even under the version of the SVP Act in effect prior to the addition of section 6604.1.

Welfare and Institutions Code section 6604 provides: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility . . . and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained." Although prior to the addition of section 6604.1 the statute did not explicitly state that the initial two-year commitment begins to run upon a finding that the person is an SVP, that is the only reasonable construction in light of the legislative intent to confine and treat those committed "until such time that it can be determined that they no longer present a threat to society." (Stats. 1995, ch. 763, § 1.) Granting credit for the time spent in custody pending trial would undermine that objective by reducing the maximum period of confinement and treatment arbitrarily, depending upon when the trial is held. The language of the statute is consistent with this interpretation because it provides that "[i]f the court or jury determines" a person is an SVP, a two-year commitment is ordered, which implies that the two-year term commences upon the determination that the person is an SVP. The inference that the Legislature did not intend precommitment credits to apply to the maximum term of commitment under the SVP Act is further reinforced by the fact that it did not include any explicit provision for such credits, yet it has explicitly

---

[5]Subdivision (b) of section 6604.1, provided that the section would be automaticaly repealed on January 1, 1999, unless a later enacted statute deleted or extended that date. The Legislature since extended the operative date of this version of 6604.1 through July 1, 2001. (Stats. 1998, ch. 961, § 7, eff. Sept. 29, 1998.)

provided for such credits in other statutory schemes, such as the former Mentally Disordered Sexual Offender Act (former Welf. & Inst. Code, § 6316.1). (See, e.g., *People* v. *Fuhrman* (1997) 16 Cal.4th 930, 939 [67 Cal.Rptr.2d 1, 941 P.2d 1189].) Moreover, although not dispositive on the issues of interpretation of the prior version of the statute, the legislative declaration, when adding section 6604.1, that it was merely declaratory of existing law, and that subdivision (a) clarified that "consistent with a civil mental health commitment, credits that may reduce a term of imprisonment are not applicable," should not be disregarded. (Stats. 1998, ch. 19, § 10; see, e.g., *Western Security Bank* v. *Superior Court* (1997) 15 Cal.4th 232, 244-245 [62 Cal.Rptr.2d 243, 933 P.2d 507].) We conclude, as a matter of statutory construction, that the SVP Act does not provide for precommitment custody credits.

Nor do we find merit in appellant's contention that the failure to provide for precommitment custody credits violates the equal protection clauses of the state and federal Constitutions.  ■  The "prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], italics in original; see also *People* v. *Macias* (1982) 137 Cal.App.3d 465, 472 [187 Cal.Rptr. 100] [same].)

■  Appellant first compares persons committed under the SVP Act with persons found not guilty by reason of insanity (*People* v. *Smith* (1981) 120 Cal.App.3d 817, 821, fn. 3, 822 [175 Cal.Rptr. 54]), and persons committed under the former scheme for mentally disordered sex offenders (*In re Huffman* (1986) 42 Cal.3d 552, 556 [229 Cal.Rptr. 789, 724 P.2d 475]), groups that were allowed presentence custody credits. The commitments in both these examples, however, are wholly or partly in lieu of a prison sentence, and the maximum term of commitment is calculated by reference to the prison term that would otherwise be imposed, and the person may be returned to the criminal court under various circumstances. Persons committed as SVP's are not similarly situated. The SVP Act provides for a civil commitment *after* the prison sentence terminates or the scheduled release from prison. There is no incarceration time remaining against which credits pursuant to Penal Code section 2900.5 should be awarded, and the calculation of the maximum term of commitment bears no relationship to the maximum prison term for criminal offenses. Moreover, the length of the maximum term is two years and is the *same* for all persons committed as an SVP. We also note the concern addressed by section 2900.5, i.e., to equalize the actual time served in custody for the same criminal offense, and to prevent inequalities in total confinement among similarly situated defendant

based upon inability to post bail, is not present. (See *People* v. *Bruner* (1995) 9 Cal.4th 1178, 1192 [40 Cal.Rptr.2d 534, 892 P.2d 1277].)[6] ·

Appellant finally suggests that if custody credits are not awarded, some SVP's will remain in custody longer than others, after their expected release date but before the commitment begins, based solely on the length of time it took to bring to trial the determination of their status as an SVP. It is equally true, however, that if credits were awarded for this period, persons with the same mental disorder and posing the same risk of reoffending would have different terms of commitment, not because of differences in their mental health, dangerousness, or need for treatment, but instead because one spent longer awaiting trial than the other. When enacting the SVP Act the Legislature "expressed concern over a select group of criminal offenders who are extremely dangerous as the result of mental impairment, and who are likely to continue committing acts of sexual violence even after they have been punished for such crimes." (*Hubbart* v. *Superior Court, supra,* 19 Cal.4th 1138, 1144.) To the extent that any disparate treatment might result, from the decision not to award credits, or from the decision to define the term as commencing upon entry of the initial commitment order, it is justified by the state's compelling interest in ensuring each person committed as an SVP, receive a maximum term of two years of treatment, and to protect the public from premature release of a person whose mental disorder makes it likely that he or she will engage in sexually violent behavior.

CONCLUSION

The judgment is affirmed.

Swager, J., and Marchiano, J., concurred.

---

[6]The Legislature also did not provide for precommitment custody credit for persons committed as mentally disordered offenders. (Pen. Code, § 2960 et seq.) It did, however, provide that the one-year term of commitment begins upon the termination of parole, or previous commitment, or scheduled release date (Pen. Code, § 2972), whereas the term of commitment under the SVP Act does not commence until the court's initial order of commitment. The difference in terms of when the commitment begins to run may be explained by the fact that a person committed as an MDO may already be undergoing treatment, prior to the commitment, as part of the process of evaluating whether he or she should be committed. (See Pen. Code, § 2962, subd. (c).)