Filed 2/10/15  P. v. Edwards CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074715 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F00015) |
| v. | |
| MARK EDWARDS, | |
| Defendant and Appellant. | |

As might be expected, a bicyclist is at a distinct disadvantage when pitted against a truck driver in a classic case of road rage.  A jury found the truck driver, Mark Edwards, guilty of assault with a deadly weapon, to wit, his truck, and brandishing a knife after he pursued the cyclist through the streets of East Sacramento, struck the bike, and pulled out a knife.  On appeal, he contends there is not substantial evidence to support the jury's finding that he brandished a deadly weapon, the court failed to instruct the jury sua sponte on self-defense, and his lawyer provided inadequate representation by failing to assert self-defense.  Finding no merit to his appeal, we affirm.

1

# I

Because defendant challenges the sufficiency of the evidence, we will report the facts derived from the entire record in the light most favorable to the prosecution and draw all inferences in support of the judgment. (*People v. Bolden* (2002) 29 Cal.4th 515, 553; *People v. Wader* (1993) 5 Cal.4th 610, 640.) As defendant points out, the evidence must be reasonable, credible, and of solid value to meet the prosecution's burden to prove each element of each crime beyond a reasonable doubt. (*People v. Cuevas* (1995) 12 Cal.4th 252, 260-261.) As a court of review we are not at liberty to reweigh any of the evidence, including the credibility of the witnesses, or to superimpose our judgment on reasonable findings by the trier of fact. (*People v. Thomas* (1992) 2 Cal.4th 489, 514; *People v. Poe* (1999) 74 Cal.App.4th 826, 830.) With these basic principles in mind, we turn to the evidence as to what occurred on the evening of October 24, 2011.

## *The Evidence*

Johann Karkheck, a seasoned bicyclist, was riding his bike home after work as he did every day. He did not own a car. As he rode east on Folsom Boulevard, a truck passed him and then accelerated, leaving a thick cloud of smoke in his face. He kept riding but was again hit with a cloud of smoke. He saw passengers in the truck pointing at him and laughing, and believing the driver was intentionally creating the smoke, he became angry and "flipped . . . off" the occupants.

As Karkheck passed the truck, he "high-fived" the passenger-side mirror. He stopped at a red light, and as the truck approached, one of the occupants yelled out, "[H]ey, you broke the mirror." Karkheck responded, "That's what you get for being a jerk." He acknowledged at trial that his behavior only inflamed the situation. The passenger jumped out of the truck and struck Karkheck on the left side of his head. Karkheck grabbed his bike lock and instructed the passenger to get away. By then, the driver had run up to him aggressively and tried to grab him, and two other passengers followed and were yelling at him, but Karkheck jumped on his bike to escape.

A supermarket clerk observed the incident and confirmed Karkheck's account of what transpired at the stoplight. He, too, testified that the passengers in the truck were yelling at the cyclist, one of the passengers jumped out of the truck and punched the cyclist in the head, and the driver also approached the cyclist. Two other passengers exited the truck as well, but the cyclist did not fight back. Instead, he fled on his bike.

Defendant pursued him. A commuter corroborated Karkheck's account of the pursuit. Karkheck eventually cut across traffic, intending to ride into a pedestrian tunnel, but defendant followed closely and struck him with the truck. Karkheck was thrown over the handlebars and into a fence near a driveway. Defendant's son got out of the truck, pushed Karkheck through the fence, and began kicking Karkheck as he lay on the ground. Karkheck grabbed the young man's crotch to get up, at which point the man picked up Karkheck's bike and slammed it into the ground.

A local attorney escorted Karkheck into his office to call the police. Worried that defendant would leave the scene, Karkheck went back outside to get defendant's license plate number. As he walked forward, he encountered defendant about six feet away with a knife blade pointed at him. Both he and the attorney told the jury that defendant appeared angry, although he did not slash or stab at Karkheck, who felt threatened and feared being attacked. Karkheck put up his hands to demonstrate he was not going to fight, and he retreated to the office. Shortly thereafter, he emerged to write down defendant's license plate number. Defendant left the scene. Karkheck suffered minor injuries to his hands, his left elbow, and his left ankle.

In a telephone interview with an investigative police officer following the incident, defendant denied being involved. Indeed, he denied being in Sacramento at all. Cell phone records demonstrated that he was in the vicinity of the incident.

Defendant did not testify, and no one testified on his behalf. Defense counsel conceded identity but argued that the prosecution had not sustained its burden of proving assault with a deadly weapon or brandishing a deadly weapon beyond a reasonable doubt.

A jury found otherwise.  Defendant was convicted of both counts and sentenced to three years in prison, with an additional year for having served a prior prison term.

*Analysis*

Defendant contends there is insufficient evidence that he brandished a deadly weapon because, although he was angry, he did not display his knife in an angry manner. In effect, defendant would have us conclude that an angry person pointing a knife at a victim does not constitute substantial evidence to support a jury finding of brandishing a deadly weapon.  The argument is utterly without merit.

Penal Code section 417, subdivision (a)(1) provides:  "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any deadly weapon whatsoever, other than a firearm, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a deadly weapon other than a firearm in any fight or quarrel is guilty of a misdemeanor, punishable by imprisonment in a county jail for not less than 30 days."

Defendant reargues the evidence, failing to distinguish our role from that of the jury.  He insists the evidence is insufficient because he made no attempt to stab at the victim; rather, he simply stood by his truck with the knife at his side.  In his view, he neither threatened the victim nor used the knife in an angry manner.  He forgets that the jury heard this very same evidence and rejected the inference he urges once again on appeal.  It is the jury's prerogative, not ours, to draw reasonable inferences from the evidence presented at trial.  The scope of appellate review, as recounted above, is very narrow, and in this case our task is a simple one—to determine whether there is substantial evidence to support the jury finding that defendant exhibited his knife in an angry or threatening manner.

The victim and the lawyer who witnessed the incident both testified that defendant was angry, and the victim testified that he felt threatened.  Given that defendant had chased a fleeing cyclist for several blocks in his truck and in doing so crossed over

4

several lanes of traffic, and appeared with a knife after his son had been kicking and beating the downed cyclist, the jury certainly could reasonably conclude that defendant had exhibited the knife in an angry or threatening manner. The witnesses' testimony, particularly when viewed in the context of the escalating series of events culminating in knocking the cyclist off his bike, constitutes not only substantial, but overwhelming, evidence to support the jury verdict.

## II

At trial, defendant wisely did not contest identity or assert self-defense, a claim that in all probability would have alienated the jury. Nevertheless, on appeal defendant now asserts that the trial court committed reversible error by failing to instruct the jury sua sponte on self-defense, and his lawyer was incompetent for failing to assert self-defense at trial. Neither the court, nor defendant's lawyer, failed him. The flimsy, indeed far-fetched, evidence that the victim had become the aggressor, justifying defendant's resort to brandishing a deadly weapon, does not constitute substantial evidence to trigger the trial court's sua sponte obligation to instruct on a defense defendant did not rely on. Nor is there any reasonable probability that such a defense would have prevailed, and therefore, defendant cannot demonstrate the requisite prejudice to support his incompetency claim.

A trial court's sua sponte duty to give an instruction on a defense not urged by a criminal defendant arises " 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.' [Citation.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 157. italics added by *Breverman*.) "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt . . . .' [Citations.]" (*People v. Salas* (2006) 37 Cal.4th 967, 982-983.)

5

It is true that the cyclist, by his own admission, demonstrated poor judgment in making an obscene gesture, telling the passenger he was a jerk, and "high-fiving" the passenger-side mirror on the truck. But the question is whether these indiscretions in the context of the entire episode constituted the requisite quantum of evidence necessary to trigger the trial court's sua sponte obligation to instruct on self-defense. We conclude the evidence falls woefully short.

To concede that the cyclist was not blameless is not a concession there was substantial evidence he became aggressive and dangerous. The facts are to the contrary. After defendant's son first struck the cyclist in the head at the stoplight, defendant himself jumped out of the truck and approached him in a menacing manner. At that point the cyclist, feeling threatened, got on his bike and pedaled feverishly to escape. Thus, whatever might be said about his initial actions that might have provoked defendant, the cyclist certainly did nothing to further agitate him or to threaten him with any physical force. Nevertheless, as the cyclist tried to escape, defendant pursued him in his truck. A witness testified defendant crossed over lanes of traffic in a reckless attempt to reach him. Again the cyclist did nothing to encourage or provoke the pursuit; rather, he tried to get away. Unfortunately, he was unsuccessful and defendant ultimately struck the bike with his truck.

Despite defendant's relentless pursuit of the victim, he now argues that the tables had turned by the time he flicked open his knife. He insists the evidence that the victim started walking toward him after leaving the lawyer's office gave him the right to pull out a knife in self-defense. We disagree.

The standardized instruction on self-defense provides, in relevant part: "The defendant acted in lawful self-defense if:

"1.     The defendant reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully;

6

"2.     The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;

"AND

"3.     The defendant used no more force than was reasonably necessary to defend against that danger."  (CALCRIM No. 3470.)

The victim testified that he walked out to get defendant's license plate number to provide to the authorities.  Defendant can point to no evidence that the victim appeared aggressive or angry as he attempted to memorize the number, that he was wielding any kind of instrument or weapon, or that he did anything whatsoever that was threatening.  Rather, defendant emphasizes that he merely stood by his truck with his knife at his side and ignores all of the evidence that he became the aggressor when pursuing a cyclist on his bike, hitting him with the truck, and then arming himself.  We conclude there simply was no substantial evidence that would have supported a jury finding that defendant reasonably believed he was in imminent danger of suffering bodily injury or that he could have reasonably believed the immediate use of force was necessary to defend against the danger the victim presented.  In the absence of some evidence that defendant was in imminent danger, the trial court had no sua sponte duty to instruct on self-defense.

Nor did trial counsel shirk his constitutional responsibility to provide competent counsel by failing to ask the court to instruct on a bogus defense.  No one disputes the basic principle of law that a criminal defendant does not receive constitutionally adequate legal assistance if defense counsel's failure to request an instruction results in a withdrawal of a potentially meritorious defense.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.)  As explained above, there is no substantial evidence that self-defense was a potentially meritorious defense.  To the contrary, the inference defendant urges us to draw that he was in imminent danger from the mere fact the cyclist walked out of the office and in his direction strains credulity.  The lawyer had no obligation to assert a

7

defense based on such a weak inference from such a thin thread of evidence.  Simply put, neither the judge nor the lawyer erred by ignoring self-defense as a possible defense.

## DISPOSITION

The judgment is affirmed.


           RAYE          , P. J.


We concur:


     NICHOLSON     , J.


     HOCH         , J.