Filed 11/16/20  P. v. Cavner CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS CLARENCE CAVNER,<br><br>    Defendant and Appellant. | 2d Crim. No. B302726<br>(Super. Ct. No. 2013015755)<br>(Ventura County) |

Thomas Clarence Cavner appeals from an order recommitting him to a state hospital as a Sexually Violent Predator (SVP).  (Welf. & Inst. Code, § 6600 et seq.)  He contends the evidence that he posed a serious and well-founded risk of sexually reoffending was insufficient.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Cavner was committed to a state hospital as an SVP in 2001 and 2004.  In 2005 and 2007, in anticipation of the expiration of his commitment, the People filed petitions to recommit Cavner as an SVP.

Cavner was 83 years old at the time of trial. The only contested issue was whether he posed a danger to others by being likely to engage in sexually violent criminal behavior. Following a bench trial, the court found that he did, and entered an order recommitting him as an SVP.

Cavner had three prior convictions for molesting a child under the age of 14 (Pen. Code, § 288). The first occurred when Cavner was 19 years old and a 10-year-old girl came into the market where he was working. He threatened to have her arrested for theft, took her to a storage room, and touched her private parts. He said he did it to hurt his mother.

When he was 30, Cavner sexually molested his seven-year-old adopted daughter on several occasions. He touched her private parts, orally copulated her, had her lick his penis, and rubbed his penis between her legs until he ejaculated. He said he did it to hurt his wife.

When Cavner was 56, he lay on a couch behind a seven-year-old girl who was spending the night and touched her buttocks with his penis.

The Department of State Hospitals documented at least five other incidents where Cavner sexually molested children between the ages of 4 and 12. His acts included indecent exposure, touching their private parts, attempting to entice girls to enter his car, and biting the crotch of a girl in a swimming pool.

At trial, forensic psychologist G. Preston Sims testified for the prosecution. He concluded that Cavner was likely to engage in sexually violent criminal behavior if released. Four psychologists testified for the defense: Dr. Gary Zinik, Dr. Douglas Korpi, Dr. Wesley Maram, and Dr. Michael Musacco.

The defense experts testified that Cavner did not present a serious and well-founded risk of reoffending if released, due primarily to his age and physical condition.

*Dr. Sims*

Dr. Sims examined Cavner in 2014, 2017, and 2019. He, like other experts, testified that Cavner suffers from pedophilic disorder and exhibitionist disorder. Sims considered Cavner's scores on the Static-99R and Static-2002R, which placed his risk for re-offense at above average, and well above average, respectively. But Dr. Sims considered the scores with caution due to the lack of validation for individuals of Cavner's age.

Dr. Sims testified that the recidivism rate for sex offenders is generally relatively low (less than 10 percent), and reoffending is unlikely after serving time in prison. Cavner was unique because he reoffended in 1955, 1966, and 1992, after being severely sanctioned for his behavior. He continued to have a sexual interest in children.

The risk of Cavner reoffending was increased by his lack of progress in treatment and lack of a detailed post-release plan. Dr. Sims found Cavner's excuses for why he committed the offenses hard to believe, and demonstrated that Cavner had not progressed beyond the beginning level of treatment.

Dr. Sims was not aware of research dealing with persons in their 70s or 80s. But other than an enlarged prostate, there was nothing about Cavner's age that "could potentially decrease his sexual motivation" or "necessarily decrease[] his risk for sexual [re-offense]." And although the risk of re-offending typically starts to decline at age 35, Cavner's history as a repeat offender starting at the age of 14 and continuing through the age of 56 made him "very unique."

3

Cavner seemed "fine" physically to Dr. Sims when he saw him in 2019. Cavner had an enlarged prostate which is correlated with reduced sex drive and erectile disfunction, and which might reduce the risk of recidivism. But Cavner's other medical issues, including arteriosclerosis, osteoarthritis, chronic obstructive pulmonary disease, sleep apnea, and cardiac arrhythmia, would not necessarily decrease the risk of recidivism given "the relatively low level of physical functioning required to molest a child." Dr. Sims found Cavner represented a "serious and well-founded risk for committing a predatory, sexually violent offense in the future."

*Dr. Zinik*

Dr. Zinik last examined Cavner in 2016. He used a walker then and grasped at furniture to walk, but he said he walked one to two miles daily.

Dr. Zinik testified that with advanced age, men lose their sexual drive and their motivation to engage in sexual behavior. A study found that only about 2 percent of men in their 80s have sexual functioning, but the study did not assess the risk of them committing sexual offenses. Other studies found a 3 percent recidivism rate for sexual offenders over 60.

Cavner told Dr. Zinik he had not had sexual thoughts in 14 or 15 years and had no sexual functioning. In concluding that Cavner did not present a serious and well-founded risk of reoffending, Dr. Zinik gave "a lot of weight" to Cavner's age, physical impairment, lack of mobility, and lack of sexual desire and sexual function.

*Dr. Korpi*

Dr. Korpi last examined Cavner in 2014. Cavner had "one of the most stunning child molest records" Dr. Korpi had

4

seen.  He testified that having more than three arrests is so rare as to "def[y] gravity," and Cavner "defied the numbers" by being arrested eight times.

Dr. Korpi believed Cavner would have been a significant risk at age 68.  But he changed his opinion of Cavner "because he got old."  The older an individual is, the less likely they are to recidivate.  Department of Justice statistics from 2001 and 2003 showed "a handful" of sex offenses by persons over 80.

Dr. Korpi testified that Cavner was still physically and mentally capable of molesting a seven-year-old.  But because of his age and medical problems, he does not "have as much zest" as before, so it would be easier to resist the impulse to reoffend.  Dr. Korpi concluded that Cavner was not a risk based "almost exclusively [on] his age and health."

*Dr. Maram*

Dr. Maram examined Cavner in 2005, 2006, 2009, and 2014.  The first three times, he concluded that Cavner was likely to commit a sexually violent crime if released to the community.  He changed his opinion in 2014, primarily because of Cavner's age and deteriorating health.

In 2014, Cavner had extreme difficulty walking 30 feet and had to catch his breath.  Cavner's enlarged prostate, sleep apnea, COPD, elevated cholesterol, and angina could impact his sex drive.  But he was still physically capable of fondling a child.

Cavner used sex as a coping mechanism.  If Cavner had the impulse to molest a child, Dr. Maram did not know if Cavner would have the coping skills or insight to refrain from doing so.

5

*Dr. Musacco*

Dr. Musacco examined Cavner in 2014, and concluded then he was likely to reoffend. He changed his opinion in 2017 and 2019 based on Cavner's age and the absence of hospital records showing he acted on his sexual desires.

Dr. Musacco testified that there is essentially no research on sexual offenders in their 80s because it is "such a rare phenomenon." Although Cavner remained physically capable of offending, and his diagnosis of pedophilic disorder will never change, Cavner was no longer dangerous due to his age. But there was no "magical time we can find him negative." Cavner remained a risk, but the risk was no longer serious and well-founded.

*Verdict*

The trial court found the People proved Cavner was an SVP beyond a reasonable doubt. It committed him to Coalinga State Hospital for an indeterminate term. (Welf. & Inst. Code, § 6604.)

The court noted that there is no research to validate the risk of recidivism for sex offenders of Cavner's age. The court credited Dr. Sims's observations and the medical records showing Cavner was not in poor health and his medical problems were well-managed. The hospital records showed Cavner's mobility was good, and he walked one to two miles daily. The court noted that all the experts agreed Cavner was still physically capable of committing a predatory sex offense.

In light of Cavner's poor credibility in discussing his sex offenses, the court declined to credit his claimed lack of sex drive or functioning. The court relied on Cavner's history, his consistent denials of attraction to children, his refusal to

6

participate in treatment, and his lack of a viable post-release plan as "a recipe for disaster."

DISCUSSION

A "[s]exually violent predator" is a person who: (1) was "convicted of a sexually violent offense against one or more victims," (2) "has a diagnosed mental disorder," and (3) is "a danger to the health and safety of others" because he is "likely" to "engage in sexually violent criminal behavior." (Welf. & Inst. Code, § 6600, subd. (a)(1).)

It was undisputed that Cavner was convicted of sexually violent offenses and had a diagnosed mental disorder. The only issue at trial was whether he was "likely" to "engage in sexually violent criminal behavior." (Welf. & Inst. Code, § 6600, subd. (a).) "'*[L]ikely*' . . . connotes much more than the mere *possibility* that the person will reoffend," but "does not require a precise determination that the chance of reoffense is *better than even* . . . . [T]he person is 'likely' to reoffend if . . . the person presents a *substantial danger*, that is, a *serious and well-founded risk*, that he or she will commit such crimes if free in the community." (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 922, original italics.) In determining dangerousness, the evaluators may consider the individual's progress in treatment. (*Id.* at p. 927.) But "proof of a recent overt act while the offender is in custody" is not required. (Welf. & Inst. Code, § 6600, subd. (d); *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1090.)

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements . . . beyond a reasonable

doubt . . . . [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses." (*People v. Jennings* (2010) 50 Cal.4th 616, 638 [criminal conviction]; *People v. Sumahit* (2005) 128 Cal.App.4th 347, 352 [SVP commitment].) "'To be substantial, the evidence must be "'of ponderable legal significance . . . reasonable in nature, credible and of solid value.'" [Citation.]'" (*Sumahit*, at p. 352.)

Dr. Sims's testimony was reasonable, credible, and of solid value. Cavner's long history of child molestation, which continued through age 56 despite prior convictions and incarcerations, his failure to participate in therapy, and his lack of a coherent release plan all supported the finding that he continued to present a substantial danger to children.

The testimony of a single witness is sufficient to prove any fact. (Evid. Code, § 411.) The trial court was permitted to accept the testimony of Dr. Sims because it was neither "physically impossible [nor] inherently improbable." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "It is not the role of this court to redetermine the credibility of experts or to reweigh the relative strength of their conclusions." (*People v. Poe* (1999) 74 Cal.App.4th 826, 831.) Here the evidence was sufficient for the trial court to conclude beyond a reasonable doubt that Cavner posed a serious and well-founded risk of committing sexually violent crimes.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.       PERREN, J.

8

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____


   Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.
   Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Toni R. Johns Estaville and Kristen J. Inberg, Deputy Attorneys General, for Plaintiff and Respondent.