Filed 3/17/25  P. v. Fogle CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C100010 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CRF14010005555, 01F5555, 14F6222 & CRF1400006222) |
| v. | |
| WILLIAM THOMAS FOGLE, | |
| Defendant and Appellant. | |

After a court trial, the trial court found defendant William Thomas Fogle to be a sexually violent predator (SVP) under the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code,[1] § 6600 et seq.) and committed him to the custody of the State Department of State Hospitals (DSH) for an indeterminate term.  Defendant contends insufficient evidence supports the trial court's findings because the two testifying psychologists completed their reports two years before his trial.  He also argues the psychologists improperly relied only upon his past offenses in making their determinations.  We shall affirm.

---

[1]     Further unspecified section references are to the Welfare and Institutions Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2002, defendant pleaded guilty to lewd or lascivious acts with a child under 14 years of age. (Pen. Code, § 288, former subd. (a).) The trial court sentenced him to six years in state prison.

In 2015, defendant pleaded guilty to annoying or molesting a child and admitted he had a prior serious or violent felony conviction. (Pen. Code, §§ 647.6, subd. (c)(2), 1170.12.) The trial court sentenced him to 12 years in state prison.

In February 2022, the prosecution filed a petition in each of defendant's prior cases to commit defendant as an SVP. The matter proceeded to a court trial in November 2023.

The prosecution presented testimony from the 2015 victim, G.M.[2] When she was about nine or ten years old, she lived in a mobile home park. One day while she was in the laundromat, the defendant came in, picked up a red bra that was way too big for G.M., and asked if it would fit her. He told her she was pretty and repeatedly asked if he could lick her private parts. She ran home to her mother.

The second victim, A.K., testified about an incident that happened with defendant when she was approximately six years old. She wanted money for ice cream, so she went to defendant's apartment to ask for some. Defendant invited her in and the two went into his bedroom. Defendant told her she would have to work for the money and tried to lift up her dress. She blocked him and said no. He tried to put his hand up the back of her dress and again she told him no. He then exposed his penis to her and said, "Why don't you just touch me?" She again told him no and pulled away, but defendant grabbed her hand and made her touch him. She kept pulling away and saying no. Defendant gave her money and ultimately let her go out to play. A.K. remembered defendant kissed her on the cheek a few times.

---

**2**  To protect their privacy, we refer to the victims by their initials. (Cal. Rules of Court, rule 8.90(b)(4).)

The prosecution presented the testimony of two psychologists. The first, Dr. Laljit Sidhu, testified he has been licensed since 2004 and has conducted over 850 sexual violent predator examinations for the state.

Dr. Sidhu evaluated defendant in December 2021. As part of his evaluation, he interviewed defendant for two hours. Dr. Sidhu spoke with defendant about the offenses for which he was convicted, his psychological development, his criminal history, his treatment, and his substance abuse. Dr. Sidhu also examined several documents, including police reports, court records, and parole records. Dr. Sidhu confirmed defendant had a conviction for a qualifying offense.

Dr. Sidhu determined defendant had two mental health disorders: pedophilic disorder[3] and alcohol abuse disorder. Dr. Sidhu based the diagnosis of pedophilic disorder on defendant's multiple incidents of engaging in inappropriate behavior with minors. These multiple incidents demonstrated defendant lacked volitional control as he committed those crimes despite the fact that he underwent treatment and had previously been evaluated by the DSH evaluators to determine if he was an SVP.[4] Defendant informed Dr. Sidhu he believed his prior treatment had been useless, and the doctor concluded defendant had not learned anything from that treatment.

For Dr. Sidhu's risk assessment of defendant's sexual offense recidivism, he used the Static-99R instrument and considered dynamic factors. Defendant scored a three on the Static-99R. He received negative points for his age, and positive points for his prior sexual offenses, prior sentencing dates, the fact that the victims were strangers, and for his indecent exposure. This score placed defendant in a category of offenders that had a reoffense rate of approximately 7 percent in five years, and 10 percent in 10 years.

---

[3]   Due to defendant's experience with adult partners, Dr. Sidhu concluded his pedophilic disorder was of a nonexclusive type.

[4]   Those doctors did not find that he met the SVP criteria.

The doctor found three different dynamic factors applied to defendant. These included: (1) his sexual preoccupation coupled with alcohol use; (2) his sexual preference for children; and (3) his resistance to rules and supervision. On this final point, Dr. Sidhu found it significant that defendant had a parole violation, had not completed his sexual offender treatment, and said that treatment was not helpful. On cross-examination, Dr. Sidhu agreed he had incorrectly concluded defendant had not completed his treatment program. Dr. Sidhu testified that the current information that he had completed the program did not change his analysis because defendant said he did not learn anything from the program.

Dr. Sidhu concluded there was a serious and well-founded risk defendant would reoffend. The doctor explained this conclusion was based on defendant's risk score on the Static-99R coupled with the fact that he had engaged in predatory behavior, believed he did not need treatment, and failed to benefit from his prior treatment. Based on defendant's age of 60 years old at the time of his evaluation, the doctor put defendant in the average category of risk, although if he were younger, the doctor would conclude defendant was at a much higher risk.

On cross-examination, Dr. Sidhu confirmed his report had been completed in December 2021. He did not update that report and was "somewhat surprised that an update was not requested at this point." Dr. Sidhu explained he did not have the authority to request an update. Dr. Sidhu stated, "Generally, it is advisable that an update be done about once a year or so because reports can essentially become obsolete or they can become old." He did confirm that it would have been useful to know whether defendant had undergone any additional treatment. Ultimately, however, the doctor testified the report contained all of the information relevant to his analysis and that he would not change or revise anything in his report.

The prosecution also presented the testimony of psychologist Dr. Craig Teofilo. Dr. Teofilo testified he has been licensed since 2001 and has conducted close to 500 SVP evaluations.

Dr. Teofilo evaluated defendant in November 2021. He spoke with defendant for two hours and 40 minutes the first time and about five minutes the second time. Dr. Teofilo concluded defendant had the requisite conviction that qualifies him for SVP status. He also concluded his prior crimes were predatory in nature.

Dr. Teofilo diagnosed defendant with pedophilic disorder, exhibitionistic disorder, alcohol use disorder, and stimulant or methamphetamine disorder.

As to the pedophilic disorder, the doctor found relevant defendant's admissions he exposed himself to a 12-year-old girl in 1984. The doctor also considered that defendant admitted to exposing himself to his daughter's friend in 1990. Dr. Teofilo also considered defendant's convictions for his conduct against A.K. and G.M. Finally, he considered defendant's prior admissions that he exposed himself to children and that he found children arousing and attractive. The doctor concluded defendant represented a highly repetitive sex offender with four detections, one additional investigation, and crimes that involved children that spanned over 31 years. The doctor also noted defendant had been caught, punished, and undergone treatment, yet he offended again, demonstrating his volitional impairment. Dr. Teofilo concluded defendant "is a man who cannot control his deviant sexual urges to touch, be with, [and] sexualize children."

Defendant's prior arrests also demonstrated to Dr. Teofilo that defendant found something about the act of showing himself to children excites defendant sexually. This was the basis for the diagnosis of exhibitionistic disorder.

In making the determination that defendant was likely to engage in sexually violent criminal behavior, Dr. Teofilo used a risk assessment protocol that looks at two separate static risk instruments and a dynamic risk assessment tool and considers protective factors that may mitigate the risk.

5

In his evaluation of defendant under the Static-99R, Dr. Teofilo scored defendant as a four. This placed defendant well above the average risk category. Averaging the results of the Static-99R and the Static-2002R, Dr. Teofilo concluded defendant's potential reoffense rate was 20 percent over the next five years and 27 percent over the next 10 years.

Dr. Teofilo also used a separate risk assessment tool called the Violence Risk Scale Score, Sex Offender Version. The doctor scored defendant as a 37 on this scale which again placed him in the well-above-average risk category. The doctor concluded defendant was likely to engage in sexually violent predatory behavior.

Dr. Teofilo testified he believed defendant was likely to reoffend without treatment on a custodial basis because defendant did not think he needed treatment. Further, defendant had previously completed outpatient sexual offender treatment and then reoffended. To make matters worse, he reoffended even after being evaluated for an indeterminate civil commitment. Thus, his prior conviction, his prior incarceration, his prior treatment, his prior supervision, and the fear of civil commitment had not been effective in preventing him from committing more sexual crimes.

Dr. Teofilo concluded defendant was predatory in nature. He based this conclusion on the fact that none of the victims were his children or lived in his home. At best they were casual acquaintances and strangers.

Defendant did not testify or present any evidence on his own behalf.

In addressing defendant's argument that the doctor's reports were stale, the trial court found, "in hearing the doctors' testimony with regard to their opinions, just the time passage that has occurred between their evaluation and now, the Court doesn't find that time passage alone, led the Court to conclude that [their] opinions were not credible. [¶] I do find the doctors' opinions credible. They did an independent evaluation that they went through thoroughly in their testimony, and both came to the same conclusion. That's significant to the Court."

6

The trial court found defendant was an SVP under the SVPA. The trial court committed defendant to DSH for treatment and confinement for an indeterminate term.

Defendant timely appealed.

## DISCUSSION

Defendant argues substantial evidence does not support the trial court's finding that "he suffered from a mental disorder that currently prevented him from controlling sexually violent behavior such that it rendered him dangerous beyond his control," (boldface omitted) because the psychologists' opinions were based on two-year-old evaluations. Defendant further asserts the psychologists improperly relied solely on his past offenses in rendering their opinion that he suffered from a mental disorder that made him a danger to others. We disagree.

A.     *The SVPA*

Under the SVPA, a " '[s]exually violent predator' " is "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) The phrase " '[d]iagnosed mental disorder' " includes "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

To commit defendant as an SVP, the trial court must find defendant was previously convicted of a violent sexual offense and suffered from a mental disorder affecting his volitional or emotional capacity, thereby making him a danger to others because he is likely to engage in sexually violent criminal behavior. (*People v. Poulsom* (2013) 213 Cal.App.4th 501, 517.)

The term "likely" does not require a finding it is more likely than not the person will reoffend. (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 916.) Whether

7

a person poses a "danger to the health and safety of others" (§ 6600, subd. (a)) "does not, by common understanding, evaporate with an expert's prediction that the sufferer's risk of reoffense is *no greater than 50 percent*." (*Ghilotti*, *supra*, at p. 920.) At the same time, a finding of such danger requires "much more than the mere *possibility* that the person will reoffend." (*Id*. at p. 922.) Thus, the prosecution must prove beyond a reasonable doubt at trial defendant "present[s] a *substantial danger*, that is, *a serious and well-founded risk*" defendant will commit such crimes if released. (*People v. Roberge* (2003) 29 Cal.4th 979, 988; §§ 6600, subd. (a), 6604.)

B.      *Substantial Evidence*

Defendant challenges the sufficiency of the evidence supporting the conclusion that he suffers from a mental disorder that currently prevents him from controlling sexually violent behavior such that it renders him dangerous beyond his control. Defendant focuses on the allegedly stale nature of the psychologists' evaluations because they were conducted approximately two years before trial.

We review the sufficiency of the evidence in a sexually violent predator case under the same substantial evidence test used in criminal appeals. (*People v. McCloud* (2013) 213 Cal.App.4th 1076, 1088.) "In assessing the sufficiency of the evidence, [the court] review[s] the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Reversal for insufficiency of the evidence is warranted only if it appears that ' "upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*Ibid.*)

Defendant's initial argument is that the SVP statute requires that the evaluations be conducted on a yearly basis, pointing to section 6604.9. That section, however, requires annual examinations for persons who have been determined to be an SVP and committed to the DSH. (§ 6604.9, subd. (a).) This section thus establishes the opposite

point from the one defendant endeavors to make because it demonstrates that the Legislature knows how to require an annual report. Specifically, it requires an annual report for persons who have been determined to be an SVP and committed to DSH. (§ 6604.9, subd. (a).) It does not impose the same requirement for pre-commitment offenders. Nothing in section 6600 requires a report to be prepared annually for persons who have not yet been committed to DSH. Further, section 6603, subdivision (d)(1), allows, but does not require, the petitioning party to obtain an updated evaluation in anticipation of trial. Thus, there is no annual requirement applicable here.

We conclude the psychological evaluations constitute substantial evidence to support the trial court's findings. To the extent Dr. Sidhu and Dr. Teofilo testified defendant had pedophilic disorder, was predatory, and was likely to reoffend, it was solely in the trial court's province to weigh this expert testimony and determine if it was credible. (*People v. Poe* (1999) 74 Cal.App.4th 826, 831 ["It is not the role of this [appellate] court to redetermine the credibility of experts or to reweigh the relative strength of their conclusions"]; *People v. Kerley* (2018) 23 Cal.App.5th 513, 530 ["The testimony of a single witness, if believed by the fact finder, is sufficient to prove any fact"].) The trial court heard defendant's argument that the testimony was stale, analyzed it, and based on its view of the witnesses, their testimony, and the facts upon which the opinions were based, concluded the expert testimony had not become stale in the intervening two years.

We do not find this finding surprising given evidence supporting the experts' opinions, including, but not limited to, defendant's record of offending against children starting in 1984 and that he committed these offenses even after he had been previously convicted, treated, and subject to a prior civil commitment examination. Dr. Sidhu's testimony that he would not change anything in his report supports the finding these psychologists' evaluations remained valid despite being two years old. We may not reweigh this testimony or determine its credibility. We thus conclude this testimony was

9

reasonable, credible, and of solid value and that a reasonable trier of fact could find beyond a reasonable doubt defendant will likely engage in sexually violent, predatory, criminal behavior if released.

C.      *Past Offenses*

Defendant further argues the psychologists' "improper reliance on [defendant's] past offenses was not substantial evidence that he currently suffered from a mental disorder that made him a danger due to the likelihood of reoffense." (Boldface omitted.) We disagree.

The parties agree, as do we, that the state may not involuntarily commit an individual based solely on past criminal conduct. (§ 6600, subd. (a)(3) ["Conviction of one or more of the crimes enumerated in this section shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination"].) Indeed, in order to commit someone under the SVPA, the statute requires the state to establish four conditions beyond a reasonable doubt: " '(1) the person has previously been convicted of at least one qualifying "sexually violent offense" listed in . . . section 6600, subdivision (b) [citation]; (2) the person has "a diagnosed mental disorder that makes the person a danger to the health and safety of others" [citation]; (3) the mental disorder makes it likely the person will engage in future acts of sexually violent criminal behavior if released from custody [citation]; and (4) those acts will be predatory in nature.' " (*Camacho v. Superior Court of Merced County* (2023) 15 Cal.5th 354, 370.)

The record demonstrates that the psychologists did not solely focus on defendant's criminal convictions, but rather they considered and demonstrated their consideration of each of the foregoing requirements.

As an initial matter, the experts properly considered defendant's prior convictions. (*People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1234.) But they did not stop there.

10

For example, each psychologist identified defendant's mental diagnosis of pedophilic disorder.

Each further concluded defendant was likely to reoffend, citing his repeated misconduct after being convicted and imprisoned, and reoffending after treatment and having been subject to civil commitment proceedings. Both psychologists used the Static-99R to assess defendant's future dangerousness which includes factors outside of defendant's prior criminal conduct to assess his risk, including his age, the nature of the victims, and the dates of the convictions. Dr. Sidhu also considered three dynamic factors related to defendant's sexual preoccupation, preference for children, and resistance to rules and supervision. Dr. Teofilo similarly testified about his reliance on factors other than defendant's criminal convictions, including defendant's rejection of the prior treatment and his reoffense after the potential prior civil commitment evaluation.

Finally, both psychologists considered the predatory nature of defendant's conduct based on the nature of the victims. In short, the psychologists did not conclude defendant was an SVP based solely on his prior criminal offenses.

## DISPOSITION

The judgment is affirmed.

_____\s\_____
Krause, J.

We concur:

_____\s\_____
Hull, Acting P. J.

_____\s_____
Renner, J.

11