Filed 11/4/22 P. v. Schreiber CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Petitioner and Respondent, v. PAUL SCHREIBER, Respondent and Appellant. | H049179 (San Benito County Super. Ct. No. CU-20-00036) |

After a jury determined that Paul Schreiber met the criteria describing a sexually violent predator (SVP), as defined by the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.),[1] the trial court committed him to a state hospital for an indefinite term. On appeal, Schreiber contends that there was insufficient evidence to support the jury's finding that he is "*currently suffering* from a mental disorder that makes him dangerous" by impairing his volitional capacity because there is no "*recent objective evidence*" of such a disorder. But, in addition to evidence of Schreiber's prior convictions, the record contains sufficient "relevant evidence of a currently diagnosed mental disorder that makes [Schreiber] a danger to the health and safety of others in that

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

it is likely that [Schreiber] will engage in sexually violent criminal behavior." (See § 6600, subd. (a)(3).) We affirm the order for a civil commitment.

## I. BACKGROUND

### A. *Petition*

On March 5, 2020, the People filed a petition to commit Schreiber as a sexually violent predator. The People alleged that (1) Schreiber had been convicted of two sexually violent offenses, a violation of Penal Code section 288.5 and a violation of Penal Code section 288, subdivision (c)(1); and (2) two or more practicing psychiatrists or psychologists, designated by the Director of the California Department of State Hospitals, had evaluated Schreiber and determined that he has a diagnosed mental disorder; such that (3) Schreiber was likely to engage in future acts of predatory sexually violent criminal behavior upon his release from custody.

### B. *Evidence of Prior Offenses[2]*

#### 1. *2004 Conviction*

On September 28, 2003, Schreiber's second daughter, then 11 years old, reported to law enforcement that Schreiber was sexually molesting her. She reported that Schreiber had continuously molested her since she was five years old. The molestation included kissing, fondling, "rub[bing] her vagina with his penis," and on one occasion "he gave her some lotion and made her masturbate him."

Following the report, law enforcement questioned Schreiber's older daughter, then 14 years old. She reported that Schreiber had repeatedly molested her since she was eight years old. The molestation included kissing, fondling, "rub[bing] his penis on her vagina until he ejaculated," and "both oral and anal sex."

---

[2] We draw the "details underlying the commission of [the] offense[s] that led to [the] prior conviction[s]" from "documentary evidence" that was admitted at the trial on the commitment petition—the probation officers' reports. (§ 6600, subd. (a)(3).)

Pursuant to a plea agreement, Schreiber pled no contest to one count of continuous sexual abuse involving two victims (Pen. Code, § 288.5). Schreiber admitted "fondling, touching and rubbing" the two victims "with his penis" and "one incident of oral sex with his older daughter." Schreiber said that he "loved [his kids] too much," "he hated himself for what he was doing" and "none of this is his daughters' fault."

Schreiber underwent a mandatory psychological evaluation on February 12, 2004. The evaluating doctor opined that Schreiber had "a high level of guilt and remorse for his actions and was not seeking to justify his behavior or transfer blame to anyone else." The doctor did not believe Schreiber was a pedophile, opining that "there would be no threat of physical harm to the child victims . . . if the Court were to decide not to imprison" Schreiber.

The probation officer recommended a prison sentence because Schreiber had committed "a horrible offense" against his two eldest daughters, each of which were abandoned to his sole custody as toddlers by their respective mothers. However, the probation officer opined that Schreiber was remorseful, would "probably be extremely compliant" if granted probation, did not appear to be a risk to the community, and had a "minimal prior record."

The court sentenced Schreiber to six years in prison.

### 2.      *2013 Conviction*

In April 2012, John Doe, through his mother, reported that Schreiber had sexually assaulted him. When interviewed, John Doe reported that two or three years earlier, when he was about 14 years old, he attended an overnight event for a church. After many people went home for the night, John Doe went to the pastor's house, as did Schreiber, who was then living there. John Doe and Schreiber went to sleep in the same bed. Schreiber touched John Doe, who told him to stop. Schreiber responded by hugging him, but temporarily stopped when John Doe told him to "knock it off." Schreiber began hugging John Doe again and this time did not end the physical contact when John Doe

3

told him to "back off." Instead, Schreiber ran his hand down John Doe's hip, over his clothes, and tried to arouse him by rubbing his penis. Schreiber then pulled John Doe's pants down and began orally stimulating him before trying "to get [John Doe] to give him 'anal,' which did not occur." Schreiber broke off the assault when it began to get light outside, and John Doe convinced himself that the event was a nightmare.

About a week later, John Doe visited Schreiber at his trailer. During the visit, Schreiber performed oral sex on John Doe in spite of John Doe's protestations that it was " 'nasty' " and made him uncomfortable. Following the assaults, John Doe began attending a different church to avoid Schreiber.

The events occurred while Schreiber was under parole supervision. At the time, he was subject to GPS tracking through an ankle monitor and had duly registered as a sex offender pursuant to Penal Code section 290.

Law enforcement searched Schreiber's trailer and found numerous pictures of juvenile boys, including one with John Doe when he was younger. Schreiber told them that some of the pictures were of his son.

Pursuant to a plea agreement, Schreiber pled no contest to one count of committing lewd acts upon a minor (Pen. Code, § 288, subd. (c)(1)) and admitted an enhancement for his prior sexual offense (Pen. Code, § 667.51, subd. (a)). When interviewed by the probation officer, however, Schreiber denied any inappropriate conduct with John Doe. At the time, Schreiber scored a two on the Static-99R, an actuarial measure of risk for sexual offense recidivism that has been shown to be a moderate predictor of sexual re-offense potential. That score placed him in the moderate risk category.

The probation officer opined that the matter "paint[ed] the picture of a man who takes advantage of his relationships with juveniles." Noting that Schreiber had betrayed John Doe's trust, won by membership in the same church, and that successive parole

4

violations suggested Schreiber was not amenable to supervision, the probation officer concluded that a "lengthy prison commitment" was appropriate.

The court sentenced Schreiber to 11 years in prison.

## C. *Expert Testimony*

Two state evaluators, Dr. Dana Putnam and Dr. Dale Arnold, opined that Schreiber met the definition of a sexually violent predator set forth in section 6600. In contrast, a defense expert, Dr. Brian Abbott, opined that Schreiber did not suffer from a current mental disorder and was not likely to engage in sexually violent criminal behavior.

Putnam and Arnold conducted independent evaluations. Each reviewed the abstracts of judgment associated with each conviction, the probation officers' reports associated with each conviction, police reports, prior mental health evaluations and notes, and prison records. Each interviewed Schreiber one time, and Schreiber declined each doctor's request for a follow-up interview. Each conducted two actuarial assessments—Putnam used Static-99R and Stable-2007 whereas Arnold used Static-99R and Static-2002R—in an effort to quantify the likelihood that Schreiber would commit a future sexually violent offense. Each scored Schreiber a two on the Static-99R, which reflects a 4.6 percent risk of reoffending in the next five years.

Putnam and Arnold reached identical conclusions for closely similar reasons. Each concluded that Schreiber had a diagnosed mental disorder, pedophilic disorder, within the meaning of the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). This means that Schreiber, an individual over the age of 16, has a sexual interest, with intense sexual urges, behaviors, and fantasies observed for at least six months, in prepubescent children, generally 13 years old or younger, and acted on those urges or was distressed by them. Further, each concluded that the disorder impaired Schreiber's volitional control and made him likely to commit violent predatory sexual offenses in the future.

5

Putnam and Arnold both explained that they find a small percentage of the individuals referred to them for review meet the SVP criteria—Putnam found that the individual met the criteria in about 8 percent of his reviews over the last three years and Arnold found that the individual met the criteria in about 7 percent of his recent reviews. Moreover, neither would ordinarily conclude that an individual with a Static-99R score of two was likely to engage in future sexually violent criminal behavior. However, both expressed concern that the manner in which Schreiber's offenses were charged by the prosecutor lowered Schreiber's score, as his continuous molestation against his two daughters was charged as a single offense rather than multiple discrete offenses: for purposes of the Static-99R, both viewed this as atypical and, as Arnold testified, jurisdiction specific.[3] Had Schreiber been charged with multiple offenses for the same conduct, his Static-99R score would have been higher. Further, each acknowledged that Schreiber had not recently engaged in any behaviors associated with pedophilia, a fact to which they attributed less significance because Schreiber was incarcerated. Ultimately, as detailed below, each relied on specific facts about Schreiber's conduct in connection with his past offenses, their respective interviews with Schreiber, and their general expertise on pedophilia in support of their conclusions.

Putnam reasoned that Schreiber's past conduct signaled an enduring sexual interest in prepubescent children that both impaired Schreiber's volitional control and was unlikely to remit. Putnam emphasized that, in his interview with Schreiber, Schreiber acknowledged inappropriate sexual conduct with his daughters and John Doe and described an inability to control his impulses, even though he knew what he was

---

[3] We understand the testimony of Putnam and Arnold on this point to be that convictions under Penal Code section 288.5—which permits California prosecutors to charge "continuous" sexual abuse of minors in lieu of allegations of specific conduct on discrete occasions—are in this respect not representative of the offender conviction data from which the actuarial risk assessment tool was developed or validated.

doing was wrong. Schreiber told Putnam that he performed oral sex on John Doe even though John Doe did not want him to; Schreiber denied encouraging John Doe to penetrate his anus. Schreiber told Putnam that when John Doe was changing into his night clothes, "he saw the boy's penis and that aroused him and that caused him to engage in sexual conduct. And that -- that his arousal was such that he did it even though he knew it was wrong." Schreiber reported that he was distressed by his conduct, but that did not stop him from engaging in the conduct even after he had undergone multiple SVP assessments, been sent to prison, and been released on parole. Moreover, after Schreiber had orally copulated John Doe but before John Doe had reported the offense, Schreiber told evaluators that he had done well and had been in treatment. Putnam found this history to support his conclusion that Schreiber had a sexual interest in prepubescent and pubescent children that affected his emotional and volitional capacity.

Putnam was particularly concerned by Schreiber's abuse of John Doe because it represented a shift from intra-family abuse of female children to predatory abuse of a male child without any prior indication that he was likely to do so and in spite of the known consequences of engaging in abuse, as Schreiber was at the time on active parole. Putnam explained that Schreiber's abuse of John Doe, unlike his abuse of his daughters, was predatory because Schreiber did not have a substantial relationship with John Doe before he committed the offense.[4] Putnam explained that the shift from abusing his own family members to individuals outside the family was unusual because "most people who offend against their children don't later offend outside of the family and don't offend again because the family knows about it now." Similarly, Schreiber's shift from

---

[4] For the purposes of the SVPA, " '[p]redatory' means an act is directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e).) Like Putnam, Arnold opined that Schreiber's abuse of John Doe, but not his abuse of his daughters, was predatory.

targeting female children to a male child[5] was consistent with an increased likelihood of reoffending.

Putnam opined that pedophilia is generally a chronic condition that does not remit. Putnam explained that a sexual arousal pattern that is established over many years is an entrenched characteristic that does not change, and the DSM-5 does not list the possibility of remission.

Putnam rejected the proposition that the absence while in prison of outward behaviors indicative of pedophilia suggested that Schreiber was no longer affected by pedophilia or lacking in volitional control: in Putnam's view, the absence of "triggers" in a prison context and the risks in prison associated with exhibiting behaviors indicative of pedophilia made Schreiber's unremarkable conduct in prison immaterial. Moreover, Putnam noted that Schreiber's decisionmaking reflected a willingness, despite warnings from evaluators, to put himself in a "risky situation" where he was likely to lose volitional control: in 2010, Schreiber had told an evaluator that he planned upon release to live with a family that included a 10-year-old boy. Accordingly, Putnam concluded that Schreiber was still afflicted by pedophilia, and was likely to engage in further predatory sexually violent criminal conduct if released.

Arnold's analysis was substantially similar.

Arnold explained that Schreiber's conduct directed at his daughters and John Doe, as discussed in Arnold's interview with Schreiber, reflected a sexual attraction to prepubescent children that impaired Schreiber's volitional control. Schreiber told Arnold that he regretted what he had done to his daughters and "was glad he got arrested. Glad

---

[5] As John Doe was 14 years old at the time of the abuse, Putnam acknowledged that John Doe may not fit neatly into the category of "prepubescent." Nevertheless, because Schreiber began abusing his daughters when they were prepubescent and John Doe was at least near the line between prepubescence and pubescence, Putnam determined that the total scope of Schreiber's conduct was indicative of pedophilia.

he got stopped." Arnold viewed Schreiber's conduct with his daughters as a "clear[]" indication of sexual attraction to prepubescent children, noting Schreiber's ejaculation as evidence of sexual arousal. Schreiber had previously attributed his conduct to "lov[ing] his children too much," and in his interview with Arnold failed to acknowledge any sexual attraction to his daughters. Schreiber's denial of such sexual attraction, in Arnold's view, left him unprepared to manage his sexual urges if released. As to John Doe, Schreiber told Arnold that before the offense took place Schreiber had noticed that he was attracted to John Doe and had tried to avoid being alone with him. At the time, Schreiber was attending outpatient treatment, the "whole point" of which "is before you do something to get yourself in trouble again, you say, 'I find that I'm attracted to this kid and I need help.' " Instead of reporting his feelings in treatment, Schreiber committed the offense against John Doe. In Arnold's view, the commission of the offense against John Doe while on parole and aware of the consequences "really show[ed] impaired volitional control."

Arnold opined that Schreiber's condition was unchanged, "because of the nature of the disorder itself. It tends to be a chronic thing." Arnold rejected the proposition that the absence of behavior that manifested pedophilia in prison indicated that the condition had remitted, stating that "[i]t's extremely rare to find evidence of pedophilic disorder in prison." Arnold explained that the lack of access to children in prison made it unlikely that Schreiber would find himself in a context where he might lose volitional control and that engaging in other behaviors in prison that were indicative of pedophilia—e.g., grooming "very young-looking inmates" or possession of child pornography—was "extremely rare because of the potential for being assaulted for engaging in that type of behavior." Arnold stated that he had frequently evaluated "individuals who have been caught, incarcerated, no evidence, get out; caught, incarcerated, no evidence; caught, incarcerated, no evidence. That pattern of behavior over time." Thus, Arnold concluded

9

that Schreiber was still afflicted by pedophilia, and was likely to engage in further predatory sexually violent criminal conduct if released.

Arnold reviewed an Abel Assessment for Sexual Interest (AASI) that Abbott conducted and opined that the results supported his opinion that Schreiber's condition was current. The AASI consists of a questionnaire and a test where Schreiber was presented 160 slides with pictures of males and females, primarily in bathing suits, ranging in age from preschool to adulthood and was asked to imagine himself being sexual with each individual, then once he has gone through the slides he goes through them again and rates the extent to which he feels sexually aroused or disgusted by his imagined sexual involvement with the individual. The AASI measures Schreiber's reaction time when he rates the pictures and analyzes Schreiber's sexual preferences based on the premise that individuals will take longer to rate images that they are more interested in. Based on his responses to the questionnaire, Schreiber received the highest possible "social desirability" score, a measure that is intended to capture the extent to which the test-taker is attempting to give a socially desirable response.[6] Schreiber's responses to the slides reflected a sexual interest in adult women and teenage females, aged 14-17. In Arnold's opinion, the fact that Schreiber was "trying to present himself in a positive light" when he took the AASI, as reflected by the social desirability score, yet still indicated a sexual interest in minors supported the conclusion that Schreiber had a current disorder.

Like the state evaluators, Abbott reviewed documents reflecting Schreiber's history and interviewed Schreiber. Like the state evaluators, Abbott scored Schreiber a

---

[6] Due to the high social desirability score, Abbott asked Schreiber to explain his understanding of the questionnaire and, after clarifying the appropriate temporal scope of the inquiry, asked Schreiber the questions again. In his second pass through the questions, Schreiber received a lower social desirability score. Nevertheless, Abbott interpreted the test results using the initial social desirability score.

two on the Static-99R. Further, Abbott reported that the AASI indicated that Schreiber's "preferential sexual interest is toward adult females." Abbott disagreed with Arnold's opinion that Schreiber's interest in teenage females was indicative of sexual deviance, explaining that females in the 14-17-year-old age group are physically developed—a "clinically significant interest towards teenage females or teenage males is not considered sexually deviant or indicative of paraphilia."

Abbott opined that Schreiber does not currently suffer from a pedophilic disorder. Abbott contrasted Schreiber's history, which he described as reflecting a "late onset of sexual arousal towards prepubescent children" with an absence of "persistent interest over time" in the typical pattern of pedophilic attraction. To that end, Abbott noted that there was no evidence of pedophilic attraction aside from the acts of molestation Schreiber committed against his daughters and John Doe. Abbott explained that in the usual case, sexual arousal toward prepubescent children would begin during the teenage years and persist. Moreover, Abbott noted the absence of indicia that Schreiber had a sexual interest in children that exceeded his sexual interest in adults, both due to Schreiber's history of having sexual relationships with adults and the results of the AASI examination.

Instead, Abbott concluded that Schreiber's history reflected that he engaged in "sexually offending behavior . . . resulting from sexual coping with his negative emotions." Abbott opined that Schreiber sexually abused his daughters because of "problems he had with their two mothers": in Abbott's view, Schreiber's problem with each daughter's mother caused him both to turn to his daughters for "emotional support" but also prevented him from forming "a close emotional attachment as a father" that would "stop [him] from acting sexually" with his children "in certain circumstances." With John Doe, Abbott reasoned that Schreiber was "lonely" and "looking for social support in the community" after his release from prison, and turned to John Doe to provide that.

11

Abbott noted that in reviewing the information and speaking to Schreiber, "it became pretty clear that he showed distorted ways of thinking that justified acting sexually with his daughters and with [John Doe]." Specifically, Schreiber believed that he was demonstrating his love and affection for his daughters by acting sexually with them and that John Doe was aroused and wanted to engage in sexual activity with him because he believed he saw John Doe get erections. Abbott acknowledged that "cognitive distortions are a major contributing factor to the sex offending behavior" but opined that cognitive distortions can be addressed in treatment.

Ultimately, Abbott opined that Schreiber had no current disorder that made him likely to commit violent predatory sexual offenses. Abbott reasoned that if Schreiber had such a disorder, there would have been recent indicia, such as self-reporting, results from physiological testing such as the AASI test, or observable behaviors while in custody, such as collecting pictures, writing or obtaining graphic stories, or shaving body hair and engaging in sexual roleplay. Moreover, Abbott stated that even if Schreiber had a pedophilic disorder at some point in his life, that condition could remit, and had remitted, as reflected by the absence of recent indicia of such a disorder. Finally, Abbott criticized the state evaluators for treating too lightly the results of the Static-99R assessment, which Abbott treated as strong support for the conclusion that Schreiber was not likely to reoffend.

## D. *Verdict and Appeal*

On May 20, 2021, the jury found the petition true. Accordingly, the trial court ordered Schreiber to be civilly committed pursuant to the SVPA. Schreiber timely appealed.

## II. DISCUSSION

## A. *The SVPA*

"Under the SVPA, the state can civilly commit individuals found to be SVPs after they conclude their prison terms." (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 646.)

12

At trial on a commitment petition under the SVPA, the petitioner must prove three elements beyond a reasonable doubt: (1) the person has suffered a conviction of at least one qualifying "sexually violent offense," (2) the person has "a diagnosed mental disorder that makes the person a danger to the health and safety of others," and (3) the mental disorder makes it "likely that [the person] will engage in future predatory acts of sexually violent criminal behavior." (§§ 6600, subd. (a)(1), 6604; see *People v. Orey* (2021) 63 Cal.App.5th 529, 561 (*Orey*); *People v. Shazier* (2014) 60 Cal.4th 109, 126 (*Shazier*).) If the person is found to be an SVP, the person "shall be committed for an indeterminate term to the custody of the State Department of State Hospitals for appropriate treatment and confinement in a secure facility designated by the Director of State Hospitals." (§ 6604.)

" 'Diagnosed mental disorder' includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c); see also *Shazier*, *supra*, 60 Cal.4th at p. 126.) " 'Danger to the health and safety of others' does not require proof of a recent overt act while . . . in custody." (§ 6600, subd. (d).) A " '[r]ecent overt act' means any criminal act that manifests a likelihood that the actor may engage in sexually . . . violent criminal behavior." (§ 6600, subd. (f).)

" 'Likely,' in this context, does not mean more likely than not; instead, the standard of likelihood [to engage in future predatory acts of sexually violent criminal behavior] is met 'when "the person presents a *substantial danger*, that is, a *serious and well-founded risk*, that he or she will commit such crimes if free in the community." ' " (*Shazier*, *supra*, 60 Cal.4th at p. 126.)

"Conviction of one or more of the crimes enumerated [in section 6600] shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. . . . Jurors

13

shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(3).)

**B.** *Standard of Review*

We review the sufficiency of the evidence to support a commitment under section 6600 as we would the evidence supporting a criminal conviction: reviewing the entire record in the light most favorable to commitment, we evaluate whether it discloses substantial evidence—evidence " ' " 'of ponderable legal significance . . . reasonable in nature, credible and of solid value' " ' "—in support of the judgment. (*People v. Carlin* (2007) 150 Cal.App.4th 322, 333.) We "may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment." (*People v. Poe* (1999) 74 Cal.App.4th 826, 830.) "Reversal for insufficiency of the evidence is warranted only if it appears that ' "under no hypothesis whatever is there sufficient substantial evidence to support [the commitment]." ' " (*Orey*, *supra*, 63 Cal.App.5th at p. 561.)

**C.** *Analysis*

Schreiber does not dispute "that he has the requisite prior conviction[s], or that he has been diagnosed with a mental disorder, i.e., pedophilia." However, Schreiber argues that the record lacks substantial evidence that he has a "current mental disorder that causes him difficulty controlling any sexually violent urges" or that he is "likely to commit a sexually violent offense if released" due to impaired volition. Specifically, Schreiber contends that the petitioner's experts could not rely upon his "past criminal conduct, which occurred more than a decade ago," without "evidence of sexual misconduct during the past decade" to conclude that those factors were satisfied. Fundamentally, Schreiber's appeal rests on the contention that a state evaluator cannot diagnose him with a mental disorder that meets the SVP criteria unless he has recently

manifested psychological symptoms of the disorder or of a serious volitional impairment flowing from the disorder.

We disagree with Schreiber's narrow reading of the record. The expert opinions admitted into evidence in this case were predicated not only on Schreiber's past misconduct, but also interviews and analyses conducted to assess his current condition and the experts' relevant experience.[7] The jury was presented with "relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(3).) Reviewing the record in the light most favorable to commitment, there is substantial evidence supporting the jury's verdict.

To be sure, Schreiber's prior criminal conduct, in context, was a cornerstone of the state experts' decision to diagnose Schreiber with pedophilia, as defined in the DSM-5. Similarly, the state experts' opinion that pedophilia does not remit was a central plank in support of their conclusion that the diagnosis is current and that pedophilia continues to affect Schreiber's volitional capacity, making him likely to engage in sexually violent criminal behavior. Schreiber does not dispute that his prior conduct is germane to the experts' analysis or that the experts may rely on general information within their

---

[7] While Schreiber's appellate briefing contains stray assertions that the expert opinions proffered by the petitioner were conjectural and/or speculative with "no facts to support" them and references to general principles regarding expert reliance on inadmissible case-specific hearsay (*People v. Sanchez* (2016) 63 Cal.4th 665, 685-686), he states no claim that the expert opinions here were inadmissible. (See, generally, *People v. Stanley* (1995) 10 Cal.4th 764, 793.) Suggesting that the state's experts relied "primarily" on his convictions and past evaluations based on those convictions, Schreiber identifies no objectionable material that informed the experts' opinions. Nor did he object to the admission of the expert testimony at trial. (See *People v. Perez* (2020) 9 Cal.5th 1, 7-14 [as a general rule, " 'failure to object to admission of expert testimony or hearsay at trial forfeits appellate claim that such evidence was properly admitted' "].) Accordingly, no challenge to the admissibility of the expert testimony is before us.

15

experience.  Thus, there is no dispute that these foundational premises were properly considered.

Assuming Schreiber is correct that there must be some evidence of current psychological symptoms that indicate that the SVP criteria continue to be met to uphold an SVP commitment, that test is satisfied here. The experts interviewed Schreiber and considered current diagnostics in formulating their opinions.  The conclusion that Schreiber satisfied the SVP criteria did not exclusively depend on the conduct for which he was convicted—coupled with the expert opinion that the condition he demonstrated through that conduct would not remit.  The conclusion was also supported by Schreiber's responses and conduct when he was evaluated in connection with the present proceedings.

For example, both Arnold and Abbott, the defense expert, testified that, in their respective interviews, Schreiber demonstrated cognitive distortions.  While Abbott viewed these cognitive distortions, including Schreiber's belief that John Doe was interested in engaging in sexual acts with him, as treatable, Abbott acknowledged that "cognitive distortions are a major contributing factor in . . . sex offending behavior." While Abbott opined that Schreiber should not currently be diagnosed with pedophilia or any other relevant disorder, his testimony supports the conclusion that Schreiber manifested objectively observable psychological symptoms that contribute to a heightened risk of reoffense.  Arnold, in contrast, viewed Schreiber's cognitive distortions as extending to his denial that he had a sexual interest in children.  In Arnold's opinion, Schreiber's ongoing denial of prior sexual attraction was an indication that he was not ready for release—Schreiber could not manage a disorder that he did not recognize.  Arnold drew a parallel to Schreiber's release following his first prison sentence, when after being convicted of abusing two daughters continuously for about six years, undergoing SVP evaluations, and being released on parole, while being treated by a therapist that he "felt close to" and "comfortable" with, he committed sexual offenses

16

against John Doe instead of reporting his attraction to John Doe to his therapist so that she could help him manage it. Arnold underscored that Schreiber had received no treatment since that time. Thus, accepting Arnold's opinions, Schreiber's cognitive distortions are current psychological symptoms that render him likely to reoffend.

The experts did not view Schreiber's past conduct in isolation, but through the lens of their general experience and in the context of Schreiber's current presentation. Schreiber's statements to both Putnam and Arnold reflected an inability to control his sexual interest in his victims, even though he was distressed by his own conduct and even when he had avenues available to seek support. Putnam expressed particular concern about Schreiber because, although his early history indicated that he was unlikely to reoffend upon his initial release, he promptly reoffended. Similarly, Arnold emphasized his experience with individuals who are repeatedly caught and incarcerated for offenses stemming from pedophilia without showing signs of pedophilia while incarcerated. At the same time, Arnold interpreted Schreiber's high social desirability score on the AASI to reflect that Schreiber was giving evaluators socially desirable, as opposed to completely truthful, responses. It was on the entire record that the state evaluators, exercising their professional judgment, gave evidence, in the form of expert testimony, that Schreiber continued to meet the SVP criteria.

Schreiber's history and current presentation at his evaluations provided a foundation for the state experts' opinions, admitted at trial, that Schreiber continued to meet the SVP criteria. There is substantial evidence to support the jury's verdict.

## III.   DISPOSITION

The order finding Schreiber to be an SVP and directing a civil commitment is affirmed.

17

_____
LIE, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
GROVER, J.

*People v. Schreiber*
H049179